Good morning, ladies and gentlemen. We have four cases on the calendar this morning. One case from the Court of Federal Claims involving an Indian grazing permit, a patent case from the District Court, and two government employee cases that are submitted on the briefs and will not be argued. The first case is Todd O'Brien v. United States, 2010-51-29. Mr. Picotto. May it please the Court, Mr. Klingman. Your Honor, I'm here to represent Todd O'Brien, who is an enrolled member of the Oglala Sioux Tribe and a land owner on that reservation in addition. Mr. O'Brien was issued three range units on the Pine Ridge Indian Reservation, which we are here to discuss today and which was the focus of the decision by Judge Weiss in this matter. And those are range units 6-9 and 7-19. A range unit is basically where the government takes a bunch of land that may be owned by a number of landowners and they put it into a unit and then they calculate how many cattle that particular unit can run and they authorize that amount of cattle to be grazed on that particular range unit for a particular year. You're asserting a breach of contract, right? Yes, this is a breach of contract. The question is, is there a contract? Is there a contract? Judge Weiss held that there wasn't a contract. As far as I'm able to ascertain that this is a case of first impression before this court because I don't believe the court has ever held that these range units were or were not contracts. The government cited and Judge Weiss cited the Algona case as support for its position that these were not contracts but at best, I guess, a permit with property rights. But they're entitled permits. They're entitled to permits. They're also referenced more than once, I believe, on the face of the permit as being contracts. Small print. But the large heading is grazing, large type grazing permit. And then you look at the actual substance of it and it's granted permission to hold and graze livestock. So, really, it's a permit. Well, it was signed by the superintendent who is the chief overall federal officer on the Pine Ridge Indian Reservation. He acts pursuant to delegated authority by the Department of Interior, Secretary of the Department of Interior on to the Commissioner of Indian Affairs. It does not say that he was signing this contract on behalf of the Indian landowners. And I think that's a particularly significant distinction because when you look at Algona in that case, which was incidentally a case that was signed by the superintendent of an Indian school for who, I don't know what relationship that superintendent of a school would have over timber. But in that case, it was made very clear that he was acting on behalf of the Indian landowners in the case. In this case, there's no doubt that in counter distinction to some of the cases under the Paley Grazing Act and some of the other cases that have dealt with that issue, the government has a unilateral right to terminate the contract for no reason. Here, that's not the case. The only way that they can terminate the contract, well, they can't terminate the contract. They can reduce it if, for example, they take land out of the range unit so that the number of cattle has to be reduced. What about the provision that says it is understood and agreed that this permit is revocable in whole or in part? I don't know if that says that in this particular agreement. I was reading it verbatim. Okay, if it does say that, Your Honor, I think you have to refer to the regulations in this case which say that we only give the right to revoke this contract in the event that the land is reduced in acreage or the land comes out of trust. We're dealing with trust land here. All of this land is held in trust by the United States government. They had to sign this agreement because they were legal title owners of the land. I don't understand your answer to Judge Lurie's question. I mean, there were grounds for revoking the permit in this case, were they not? There were grounds. Are you suggesting that the permit was not revocable assuming there were sufficient grounds to revoke the permit? I don't think that there's any question but that if there is grounds that it can be revoked. But there's a hearing procedure to allow them to do that. In other words, yes. Is that the same hearing procedure that we've got going on in this case? Yes, that's been ongoing for like eight years now and still has not finalized itself. So turning to that then, why isn't there claim preclusion? There is not claim preclusion because number one, as I just said, I think it's unfair to require claim preclusion in this case in view of the length of time that has taken the administrative process. Do you have any case law to support the fact that claim preclusion is obviated if it takes the government excessive amount of time? Well, I know that there is one of the elements of claim preclusion, I believe, is if it would be unfair to give preclusive effect to a particular decision. And I think that's cited either by the government or myself in our briefs. I can't recall any particular case. You agree there's claim preclusion, you just think that it's not, we cannot apply it in this instance. Well, there's two elements to claim preclusion that's important. Number one was whether or not there was a fair and reasonable opportunity to litigate the particular issue. In this case, I think the IBA only can deal with equitable relief. Here we're asking for legal damages. It has limited authority, can't award damages, hardly ever has hearings, hears no testimony. Under oath, it's based on the record in a particular case. So are you arguing that there's no claim preclusion because of the nature of the body here, the administrative body that's charged with adjudicating this case? For two reasons I'm saying that there's not claim preclusion. Because there was not a full and fair opportunity to litigate this case because it's unfair to give the, first of all, if in fact claim preclusion requires it to be a final decision, there's never been a final decision in this case. It's still on remand. And then even if that is a grounds to give preclusive effect, it's unfair to give something that has been ongoing for eight years and still has not had any finalization to it and use that as an obstacle for legal damages in this case, Your Honor. There's two claims in this case that were not barred by res judicata. Number one is the claim on range unit 719. That was never dealt with by the IBIA in this case. It could have been dealt with, right? You could have raised that along with the others. They underlined the actual issues with respect to all of them and they're pretty much the same, are they not? I assume that we could have appealed that to the Bureau, but we did not. And I don't believe that there's any law that says that if there's administrative relief that might be available that would not be authorized to give the claimant money damages. It's required to be exhausted prior to making claim for money damages in this case. The other claim that was not addressed by the IBIA in this case is the third claim for relief, and that was where he was not allowed to use any of these range units for the 2004 grazing period in this case because the Bureau just misread their regulations. And they said that since there was an appeal that was ongoing they couldn't use the regulation. Well, the regulation says that... Just for my clarification, which claims are those? That would be the third claim in this case. And that was not addressed by the IBIA in this case. And as a result of that particular deprivation, the complaint indicates that he had 800 yearlings that he'd bought in anticipation that he would be able to use them for the 2004 grazing season. Mr. Picotta, Mr. O'Brien did get some money back, didn't he? On the fourth claim for relief, the court held that he did get the $39,000 that they attempted to charge him as a condition for using the land in 2005. In other words, he went in and he gave them the money for 2005 and they applied it to 2004, but he wasn't able to use it. So the court and Judge Wiest entered judgment for Mr. O'Brien, but that's only part of the damages in that particular case. He was not able to use that range unit for the entire year. I mean, that's 600 head of cattle. Out in South Dakota, that's big money. That's significant because he had to take those cattle to a feedlot, pay a feedlot to fatten those cattle, and at a loss of $300,000 in this case. That is a claim that is a viable claim. He was clearly damaged by it, and if no other claim is remanded for hearing, that should be the claim that's... How much do one of these head of cattle go for? I just don't... Well, right now, I can't tell you the exact head right now. I know it's very high at this particular point in time. I have no perspective whatsoever. You can tell me... Probably somewhere... A cow is probably somewhere between $800 and $1,200 right now, which is very high. Then why would he spend $300,000? Isn't that what you said it was, to feed 800? Right. He lost that. I can't tell you... That's what's set forth in the complaint. I can't tell you the calculation on how he'd come up with that, but that's what he has claimed in this particular case. You wanted to save some rebuttal time. Yes, thank you, Your Honor. Mr. Klingman. May it please the Court. The decision of the Court of Federal Claims should be affirmed. The Court correctly held that Mr. O'Brien's permits were contracts between the Indian landowners and Mr. O'Brien, not contracts with the United States, pursuant to the applicable permits, statutes, and regulations. The government granted and administered Mr. O'Brien's permits as revocable licenses on behalf of the Indian landowners, and the proper remedy for any dispute between Mr. O'Brien and the BIA regarding the administration of these permits was in the Department of Interior's administrative process. Well, his answer, as you heard part of it today and you've seen part of the briefs, is that there's no monetary damages available for that. So is that just where he's stuck, because there's an administrative proceeding, notwithstanding that they don't have the authority to grant him monetary relief? That is the forum that the BIA and the Department of Interior have established for resolving disputes with the government concerning these permits. Now, the regulations state that permits are contracts between the Indian landowners and Mr. O'Brien, but that the government administers them as permits, and that's why there is an administrative process. So where is his relief? In the administrative forum. Does he have a claim against the tribes, then? We don't have a position on that, Your Honor. Again, the regulations state that these are contracts between Indian landowners and Mr. O'Brien. In fact, that's clear from the statutes and the regulations that BIA's responsibility is to assist Indian landowners in issuing permits and leases for their land, land that they have an interest in, a surface interest right in, including grasslands, as in the case here. Well, is he going to get... Would an individual, not him necessarily, but just any individual, therefore, get bounced back and forth? I mean, if he goes into state court or otherwise and seeks a claim, a breach of contract claim, against the tribes because the government has said they're only the conduit here, are the tribes going to be able to say, no, we don't have any authority, we've turned it all over to the government? They're the ones that ought to be here. That may be the case. We haven't addressed that in the briefs and we haven't taken a position on that question. There may be issues of tribal sovereign immunity. Again, that's not a position we're taking here since this case was in the Court of Federal Claims and it involves a claim of a contract which, on its face and pursuant to the statutes and regulations, is not a contract with the United States. And your position, is your position on the trustee notion that the government hasn't waived sovereign immunity to be sued as the trustee? That's correct. The statute ARMA, the American Indian Agricultural Resource Management Act of 1993, section 712D, makes clear that the United States does not waive its sovereign immunity regarding the BIA's administration and supervision of permits for Indian agricultural land. So it may be that they can't bring a claim anywhere. They can't sue the Indians because of tribal sovereignty and they can't sue the U.S. government because of sovereign immunity. That may be the case. Again, we haven't taken a position on that particular issue and that would be an issue for a tribal or state or even federal district court to take up. Certainly, vis-a-vis the government's role in administering and deciding on remedies, including cancellation of permits, that process is clearly set forth in the regulations that we cite in our brief, 166.700-709, and the Department of Interior's own regulatory scheme. Those would be appealed to the Interior Board of Indian Appeals and possibly even the superintendent. And the Interior Board of Indian Appeals, of course, has the ability to conduct hearings, to take in evidence, and to make decisions. They simply don't have the power to issue damages, issue a decision regarding damages against the United States. What's the status of that proceeding? That proceeding currently is on remand to the agency for consideration of actual damages caused by Mr. O'Brien's overgrazing and other permit violations on Range Units 6 and 9. And the agency has not recalculated those damages. But as far as the question of whether the cancellation by the BIA of Mr. O'Brien's permits for 6 and 9 was proper, the IBIA held in 2005 and reaffirmed in 2008 that that cancellation was proper. But that was only with respect to two of the three plots, right? That is correct, because Mr. O'Brien did not bring a claim regarding Range Unit 719 in the administrative forum. Are the underlying factual issues all the same? The underlying factual issues there are somewhat different, and we did address that in the briefing below. I don't believe we addressed it in our briefing in this court, but essentially the documents that are referred to in the complaint make clear that the tribe allocated Mr. O'Brien's allocated the land that was subject to Permit 719, so that Mr. O'Brien was no longer able to graze on that land. An allocation is something that's accounted for, is a process that the tribes can engage in. You're not suggesting that Mr. O'Brien grazed. I'm sorry? You're not suggesting that Mr. O'Brien grazed. Mr. O'Brien's cattle grazed. I did misspeak, Your Honor. Thank you. I don't believe that. That was absolutely a misstatement. Yes, Mr. O'Brien was able to graze his cattle until the tribe allocated that land. As the court in this case correctly found, the Indian landowners are primarily responsible for granting permits, and only under certain circumstances will the government do so, as we have discussed. We'd also like to point out, to the extent it wasn't fully explored in the briefs, that tribes and Indian landowners are deeply involved in BIA actions regarding granting, administering, and canceling permits, and the regulations are replete with examples of those. We've touched on the fact that the government grants and administers these permits as replicable licenses. That's all addressed in our briefs. I will not address that again unless the court has any questions. Race judicata. Counsel discussed race judicata. That is all also set forth in our briefs, the reasons why, even if these were contracts with the United States, that his claims barred race judicata. Finally, we've addressed the fact that the breach of trust responsibility and takings claims, which Mr. O'Brien asserts in his briefs, were not raised below. Certainly not in his complaint and not in the briefs either. There's no basis for tort claims. Not in the Court of Federal Claims. The Court of Federal Claims correctly dismissed his tort claims as well, which are found in the complaint. The Court of Federal Claims correctly found that Mr. O'Brien's permits were contracts between the Indian landowners and Mr. O'Brien, not the United States. Mr. O'Brien's breach of trust responsibility and takings claims were not raised below, and they lack merit in any event. For these reasons, the final decision of the Court of Federal Claims should be affirmed. Thank you. Thank you, Mr. Kleinman. For the record, I do graze over the dessert tray at a buffet. And I graze over many. Right. Mr. Picotta, we'll give you three minutes of rebuttal. The United States has entered into these agreements as, number one, a legal landowner, because it owns legal title to the land, although it holds it in trust for the beneficiaries. It also acts as a fiduciary, as a trustee. So in these particular cases, the government is entering into these agreements as a owner of the land and also as a trustee and a fiduciary, or in the trust responsibility to the parties. And including Mr. O'Brien in this case. And the landowners didn't breach this agreement. This wasn't a landowner breach. This was a breach by the government in their administration of these contracts. They breached the agreement that only they could make. So the United States is responsible here, whether or not it signs as owner of the land or as a trustee. And wouldn't it be odd that if the government is not responsible, that the poor Indian beneficiary is saddled with the misconduct of the government? And I think it's clear under common trust principles that the Supreme Court and this court has applied in these particular cases that a trustee can be liable for agreements that it makes on behalf of... for breaches of agreements that it makes on behalf of the beneficiary. But liable to whom? To the beneficiaries. But he's not suing as a beneficiary. He's suing as a permittee. Yes, and I think that they owed him a trust responsibility as much as they owed the Indian landowners a trust responsibility. He owned land in these particular units. And Judge Weiss, you know, in entering his decision in this case, held that this was a property right. Unlike a lot of the licenses in different kinds of cases where this court and other courts have said that those rights to graze don't even give rise to a property right. Judge Weiss clearly found that there was a property right in this case because of the nature of the contract in this case. And consequently, Mr. O'Brien should be able to sue the United States for the agreement that it made in this case as a beneficiary of that trust that the government has in this case. And to the extent that Judge Weiss ruled that there was no trust responsibility to Mr. O'Brien, I think that he was in error on that. Thank you, Mr. Picotto. We'll take the case under review.